UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

HELEN R. TAVARES,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner
of Social Security Administration,

    Defendants.
_____/

No. C 06-6583 PJH

**MEMORANDUM DECISION AND ORDER THEREON**

Plaintiff Helen R. Tavares ("Tavares") seeks judicial review of Social Security Commissioner Michael J. Astrue's ("Commissioner") final decision denying her disability benefits pursuant to Title 42, section 405, subdivision (g) of the United States Code. Having considered the parties' cross-motions for summary judgment, the pertinent legal authorities, and having reviewed the administrative record, the court hereby DENIES Tavares' motion, GRANTS the Commissioner's motion, and AFFIRMS the ALJ's decision.

**BACKGROUND**

Tavares is a fifty-three year old woman who resides at a homeless shelter. Administrative Record ("A.R." 400). She has a son who is twenty-eight years old. (A.R. 3). Tavares holds a high school diploma but has no other vocational training. (A.R. 400).

Tavares claims she has been disabled since December 8, 1997, and that her disability stems from both mental and physical impairments. As for her mental impairments, Tavares testified that, all of a sudden one day, she became very emotional and it changed her "life completely." (A.R. 405). Tavares described this as a "breakdown"

in which she "became confused and her thoughts were not together." (A.R. 405). Tavares testified that her breakdown was due to a lot of "bad things" that have occurred to her over the years, and also because of her failure to "deal" with these incidents, and that it resulted in her feeling confused, anxious, nervous, and generally "emotional." (A.R. 406).

Second, Tavares also claims disability based on physical impairments, including heart failure. As a result of her heart failure, Tavares asserts she is unable to move around, feels sore, has limited breathing capacity, and is required to take nitro pills. (A.R. 405). She claims that these physical impairments prevent her from being a good employee, in part because they make it difficult for her to concentrate, and because she has trouble sitting and/or standing for a long time. (A.R. 423). Additionally, Tavares claims that she suffers from arthritis in her legs and hips. (A.R. 423).

Tavares also suffers from drug abuse and addiction problems, which she claims impair her ability to work. For instance, she testified that she was addicted to Klonopin for eleven years, and that its side effects made her tired and sleepy. (A.R. 421). She also stated that she abused her mother's morphine for six years, and testified that she independently decided to stop taking her prescription medications because when her doctors attempted to wean her off of them, she suffered her heart attack. (A.R. 410-411). Nonetheless, Tavares admitted that she still takes Paxil, an anti-depressant. She further testified that if she fails to take Paxil, she gets "jittery" and feels "worse." (A.R. 422).

The record contains information concerning Tavares' employment history dating back to the 1990's. Her prior employment positions include work as a dispatcher, general clerk, and as a billing clerk. (A.R. 428). However, it is difficult to discern her last official employment position. For example, Tavares stated that between November 1999 and September 2000, she worked for Romick Environmental Technologies as an executive secretary for the vice-president. (A.R. 404). Following this position, and as late as September 2000, she asserts that her last job was at grocery store, but her position there is unclear from the record. Tavares also states that in 2003, she was employed at three

different temporary jobs, and that her last paid job was at Labor Ready[1] where she held short term, temporary odd labor jobs. (A.R. 403).

## STATUTORY AND LEGAL FRAMEWORK

The Social Security Act ("Act") provides for payment of disability insurance benefits to people who have contributed to the social security system and who suffer from physical or mental disability. *See* 42 U.S.C. §423(a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step sequential evaluation process. 20 C.F.R. §404.1520. The ALJ may terminate the analysis at any stage where a decision can be made that the claimant is or is not disabled. *See Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990).

At the first step, the ALJ must determine if the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the ALJ finds that the claimant is engaged in gainful activity, then the claimant is precluded from receiving benefits. 20 C.F.R. § 404.1520(a)(4)(i). At the second step, the ALJ considers the medical severity and duration of the claimant's impairments. 20 C.F.R. § 404.1520 (a) (4) (ii). To be severe, an impairment must "significantly limit" the claimant's "physical or mental ability to do basic work activities." 20 C.F.R § 404.1520(c). The third step requires the ALJ to consider whether the claimant's impairment(s) "meet[] or equal[] one of [the impairments] in the Listings" of Impairments in the regulation. 20 C.F.R § 404.1520(a)(4)(iii). If the claimant's impairment or combination of impairments is contained in the Listing, the claimant is found to be disabled. 20 C.F.R § 404.1520(a)(4)(ii).

The ALJ will proceed to the fourth step only if the claimant's condition does not meet the Listings at Step Three. At Step Four, the ALJ considers whether the claimant has sufficient residual functional capacity ("RFC") to perform her past relevant work despite the limitations caused by her impairments. 20 C.F.R. § 404.1520(a)(4)(iv). If the impairment(s)

---

[1] It is unclear from the record regarding what type of business Labor Ready is, and what Tavares' position was with the company.

3

prevent the claimant from doing past relevant work, the ALJ is required to show at Step Five that the claimant can perform some other work that exists in significant numbers in the national economy, taking into consideration the claimant's "residual functional capacity, age, education, and past work experience." 20 C.F.R. § 404.1520(f).

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in her previous occupation. *Andrews v. Shahala*, 53 F. 3d 1035, 1040 (9th Cir. 1995). If the sequential evaluation process proceeds to Step Five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work. *Id.*

## ALJ'S FINDINGS

In this case, the ALJ determined that Tavares was not disabled at steps four and five of the sequential evaluation process because she could perform her past job as a clerk, and alternatively, because she could also perform other jobs, such as laminator, key-cutter, and cashier.

At Step One, the ALJ found that Tavares was not gainfully employed. (A.R. 13). At Step Two, the ALJ found that Tavares suffered from several "severe" impairments, including benzodiazepine (Klonopin) dependence/anxiolytic abuse, a history of methamphetamine abuse, in remission, major depressive disorder, recurrent degenerative disc disease, impingement syndrome,[2] right shoulder osteoarthritis, and restrictive lung disease. (A.R. 14).

The ALJ also determined that several of Tavares' alleged impairments were not severe, including her hypertension and hyperlipidemia,[3] because they were "well-

---

[2] Impingement syndrome is a common condition affecting the shoulder often seen in aging adults. The typical symptoms of impingement syndrome include difficulty reaching up behind the back, pain with overhead use of the arm and weakness of shoulder muscles. *See* http://www.medicinenet.com/impingement_syndrome/article.htm, as visited November 9, 2007.

[3] Hyperlipidemia is a condition of elevated levels of lipids in the blood plasma. *Stedman's Medical Dictionary* at 922 (28th ed. 2007).

4

controlled" by her medication. (A.R. 14). The ALJ similarly found that Tavares' coronary artery disease, chronic heart failure, dyspnea,[4] pulmonary congestion, Gastroesophageal Reflux Disease (GERD), leg edema, and squamous cell carcinoma were not "severe" because they were also "well-controlled" by medication. (A.R. 14). Finally, the ALJ found that one of Tavares' "severe" impairments, the restrictive lung disease, had not lasted for a period of twelve or more continuous months as required by the Act. (A.R. 14); 20 C.F.R. § 404.1509; 20 C.F.R. § 416.909.

At the third step, the ALJ found that none of Tavares' impairments, individually or in combination, met the specific criteria of any of the Listing Impairments in the Code of Federal Regulations. (A.R. 14). The ALJ then proceeded to evaluate Tavares' RFC. (A.R. 14-15). At this intermediate step, the ALJ assessed the entire record, and evaluated both Tavares' mental and physical impairments, including those that were severe and non-severe. (A.R. 14).

Based on the totality of the record, the ALJ found that Tavares had an RFC that permitted her to lift and carry 10 pounds frequently and 20 pounds occasionally. (A.R. 20). He also found that Tavares could sit, stand and walk for six hours in an eight hour workday, could climb a ramp or stairs, kneel, crouch, or crawl occasionally, could reach with her bilateral upper extremities occasionally, and should be precluded from all climbing of ladders, ropes, or scaffolding. (A.R. 20). Nonetheless, the ALJ also concluded that Tavares had "difficulty persisting with her work such that she can perform only relatively short tasks, cannot understand, remember, or carry out detailed instructions, and needs to work in a relatively low-stress environment with little conflict and few deadlines." (A.R. 20).

At Step Four of the sequential evaluation process, the ALJ evaluated all the record evidence as well as the testimony of a vocational expert ("VE") in determining that Tavares retained the RFC to perform her past relevant work as a general clerk. (A.R. 20). As a

---

[4] Dyspnea is a "disordered phonation, articulation, or hearing due to emotional or mental deficits." *Stedman's Medical Dictionary* at 599 (28th ed. 2007).

result, the ALJ found that Tavares was not disabled, but nevertheless proceeded to the fifth and final step of the evaluation process.  At Step Five, in addition to her prior work as a general clerk, the ALJ also found that Tavares was able to perform the following additional jobs: (1) laminator; (2) key cutter; and (3) cashier II.  (A.R. 21).

**DISCUSSION**

**A.    Standard of Review**

An ALJ's decision denying disability benefits can be set aside only if "the ALJ's findings are based on legal error or are not supported by substantial evidence." *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  It is "more than a scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).  The court is required to review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993); *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  The ALJ is responsible for determining credibility and resolving conflicts in evidence and testimony, *Andrews*, 53 F.3d at 1039, and where the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's decision. *Magallanes*, 881 F.2d at 750.

**B.    Issues**

Tavares seeks reversal of the ALJ's decision based on the following alleged errors:

1. the ALJ improperly rejected Tavares' subjective symptom testimony;
2. the ALJ erred in rejecting the findings of Tavares' treating physician, Dr. Janet Grimes;
3. the ALJ failed to consider Tavares' affective disorder impairments at Step Three of the disability evaluation;

6

4. the ALJ's finding regarding Tavares' RFC was improper and unsupported because he failed to properly evaluate the subjective symptoms reported by Tavares and based on Dr. Grimes' medical opinion; and

5. the ALJ's findings at the fourth and fifth steps of the evaluation process were erroneous because they were premised on an improper RFC determination.

**C. Analysis**

### 1. The ALJ did not Err in Rejecting Tavares' Subjective Testimony

Tavares argues that the ALJ applied an erroneous legal standard when he rejected her testimony about her symptoms and subjective limitations.

In *Smolen v. Chater*, the Ninth Circuit held that in deciding whether to accept a claimant's subjective testimony, an ALJ must perform a two-prong analysis, and that both prongs need to be satisfied before an ALJ may reject a claimant's subjective testimony. 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first prong, a claimant must produce objective medical evidence of an impairment or impairments, and the claimant must show that the impairment or combination of impairments could reasonably be expected to (not necessarily that it did in fact) produce some degree of the symptom or pain alleged. *Id.* at 1282. Once the claimant satisfies the first prong, and if there is no affirmative evidence suggesting the claimant is malingering, then under the second prong, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings that include clear and convincing reasons for doing so. *Id.* at 1283-1284. The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion. *Id.*; s*ee also Swenson v. Sullivan*, 876 F.2d 683, 687-688 (9th Cir. 1989).

The Ninth Circuit has explained that at the second prong of the analysis, the ALJ may determine the credibility of the claimant's symptom testimony based on any of the following:

(1) claimant's reputation for lying;

United States District Court
For the Northern District of California

(2) prior inconsistent statements concerning the symptoms;

(3) other testimony by the claimant that appears less than candid;

(4) unexplained or inadequately explained failure to seek treatment;

(5) failure to seek treatment;

(6) failure to follow a proscribed course of treatment;

(7) claimant's daily activities;

(8) claimant's work record; or

(9) observations of treating and examining physicians

*Smolen* 80 F.3d at 1284; s*ee also Boatsman v. Apfel*, 2001 WL 253200 at *3, n.1 (N.D. Cal. Feb. 27,2001); 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

Here, Tavares satisfied the first prong by producing medical evidence from doctors highlighting her disability symptoms. However, Tavares is incorrect that the ALJ cannot then dismiss her subjective symptom reporting based on her credibility. At the second prong, Ninth Circuit law is clear that the ALJ can take into consideration the claimant's reputation for truthfulness. *Smolen*, 80 F.3d at 1284.

The ALJ here adhered to the appropriate legal standard. The transcript shows that the ALJ pointed to clear and convincing evidence in rejecting Tavares' subjective testimony. For instance, the ALJ noted that there were inconsistences regarding Tavares' inability to perform any work due to her impairments, and also with respect to her daily activities that included taking care of her elderly mother, washing dishes, doing laundry and cooking, getting around on public transportation, and shopping with some assistance. (A.R. 17). The ALJ also noted that Tavares was inconsistent in her statements regarding drug use because she stated that she quit, but was still abusing morphine. (A.R. 17). Finally, Tavares' assertion that she suffered a heart attack was also inconsistent. The ALJ noted that despite her testimony about this condition, no doctor made note of it in her medical records. (A.R. 414-415). Based on all these reasons, the ALJ appropriately determined that Tavares lacked credibility and properly rejected her subjective symptom

8

testimony.

For these reasons, this claim fails.

**2.    The ALJ did not Abuse his Discretion in Rejecting Dr. Grimes' Opinion**

Tavares also argues that the ALJ failed to provide sufficient reasons for disregarding her treating physician, Dr. Grimes' medical opinion.

Dr. Grimes is a resident physician at Contra Costa Regional Medical Center in Martinez, California. (A.R. 118). She has been Tavares' treating physician since November 2004. (A.R. 16, 115). On February 21, 2005, Dr. Grimes completed a Cardiac Residual Functional Capacity Questionnaire for Tavares. In the questionnaire, Dr. Grimes diagnosed Tavares with chronic hypoxia, and pulmonary hypertension, likely secondary to restrictive lung disease. (A.R. 115-118; 381-384). Dr. Grimes also noted that Tavares had a history of coronary artery disease, but that she was not currently symptomatic. (A.R. 115, 381). Additionally, Dr. Grimes explained in the questionnaire that Tavares suffered from anxiety, depression, hypertension and coronary artery disease. (A.R. 116, 382). Dr. Grimes noted that it was unclear whether stress exacerbated Tavares' symptoms, or whether emotional factors contributed to the severity of Tavares' subjective symptoms and functional limitations.

As for physical limitations, Dr. Grimes stated that Tavares could walk 2-3 city blocks without rest or severe pain. (A.R. 383). Dr. Grimes also commented that Tavares would need a job which permits her to shift positions at will from sitting, standing or walking. (A.R. 383). Moreover, Dr. Grimes stated that Tavares would need to take unscheduled breaks during an eight-hour work day.

Despite all these findings, Dr. Grimes stated that she was uncertain about Tavares' prognosis. (A.R. 116). At the end of the questionnaire form, Dr. Grimes made the following notation:

> Please note that since patient's work-up is still on-going and her diagnosis remains uncertain, many of these subjective questions are difficult to answer. Further I have only seen the patient twice in clinic and once as an

> in-patient at CCRM and I still have a lot to learn about her complicated medical history.

(A.R. 118, 384).

The ALJ ultimately rejected opinions contained in Dr. Grimes' February 2005 questionnaire for several reasons. First, the ALJ found that Dr. Grimes' opinion was equivocal based on the last notation she made on the questionnaire, determining Dr. Grimes' opinion "more of an interim than a final opinion" regarding Tavares' ability to function. (A.R. 16). Second, the ALJ found several inconsistencies within the questionnaire itself. For example, the ALJ noted that Dr. Grimes' opinions regarding Tavares' stress were inconsistent because she stated that it was unclear whether stress played a role in Tavares' symptoms, but, at the same time, also found Tavares was incapable of tolerating even low stress jobs. (A.R. 16). Additionally, the ALJ also found inconsistencies in Dr. Grimes' opinions concerning whether Tavares' cardiac symptoms and her psychological preoccupation with them would interfere with her attention and concentration.

Section 20 C.F.R. § 404.1527 governs the evaluation of medical opinions. The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Charter*, 81 F.3d 821, 830 (9th Cir. 1995); *see also Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). It has held that "more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Lester*, 81 F.3d at 830. If an ALJ chooses to disregard a treating physician's opinion, "he must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Embrey*, 849 F.2d at 421. An ALJ can meet this burden "by setting out a detailed and thorough summary of facts and conflicting evidence stating . . . his own interpretations and explaining why [it] rather than the doctor's are correct." *Id.* at 421-422.; *see also Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). In

short, the ALJ "must provide specific, legitimate reasons for rejecting" the treating physician's opinion. *Embrey*, 849 F.2d at 421.

Here, based on the notation that Dr. Grimes made on the Cardiac Residual Functional Capacity Questionnaire, it appears that at the time the doctor completed the form, she may not even have been Tavares' *treating* physician.[5] However, assuming that Dr. Grimes could be considered a treating physician, the ALJ properly dismissed her medical opinion by setting forth legitimate and specific reasons for doing so. For instance, the ALJ pointed to the fact that Dr. Grimes' opinion was an interim opinion because she still had to "work up" Tavares as well as "still [had] to learn about her complicated medical history." (A.R. 16). This constitutes a legitimate basis for rejecting Dr. Grimes' opinion because the ALJ specifically pointed to Grimes' statements. *See Embrey*, 849 F.2d at 421. It also accords with 20 C.F.R. § 404.1527(d)(2)(ii), which allows the ALJ to account for the frequency of visits, since Dr. Grimes' examination and test results were still a work in progress. Additionally, as set forth above, the ALJ also pointed to the internal inconsistencies in Dr. Grimes's opinion.

For these reasons, this claim also fails.

### 3. The ALJ did not Err in his Step Three Consideration of Tavares' Mental Impairments

Tavares also argues that the ALJ erred at Step Three of the sequential evaluation process when he failed to consider whether her mental impairments satisfied Listing 12.04.

As noted, in this case, the ALJ acknowledged Tavares' mental health history, which consisted of short, turbulent periods followed by longer, calmer periods. In making a determination about whether or not to evaluate Tavares' affective disorder(s) as part of his ultimate decision on disability, the ALJ looked at the entire record.

The record indicates that Tavares' history of mental health impairments began in the

---

[5] Dr. Grimes noted on the questionnaire that she "still need[ed] to learn about Tavares medical history," and also that she needed to conduct additional medical tests. Moreover, Dr. Grimes noted that she had only seen Tavares a total of three times at that time.

11

early April 2002, when she reported suffering from depression for six months. (A.R.17). In order to reduce her depressive symptoms, Tavares was prescribed Klonopin, Trazadone, Zoloft, and Buspar. (A.R. 17). However, a month later, Tavares returned to the emergency room still complaining of depression and she was referred to John George Pavillion for help. (A.R. 17).

After Tavares' depression in 2002, there is nothing in the record regarding Tavares' mental impairments until October 2003. (A.R. 17). At that time, she returned to the emergency room seeking help in weaning herself off Klonopin. (A.R. 17, 130-131). The next relevant record is from February 2004, at which time Tavares underwent a mental status examination by the Schuman-Lilies Clinic, conducted by Dr. Daryn M. Reicherter, a psychiatrist. The Clinic's report states that Tavares still was experiencing depressive symptoms, mild adhedonia, and fatigue. Accordingly, she was prescribed four different types of antidepressants to help alleviate her symptoms.

In the latter part of 2004, Tavares also underwent a state agency consultative psychological evaluation. This evaluation, conducted by Dr. Laurie Weiss, a state agency psychologist, found that although Tavares had difficulty maintaining persistence due to her depression, she was in fact able to understand, remember, and carry out at least simple and uncomplicated one-or-two step instructions, and she was also able to interact appropriately, to maintain concentration, and had the cognitive ability to manage her finances. Ultimately, Dr. Weiss concluded that Tavares had no severe mental health impairment. (A.R. 19, 183). Another assessment conducted by Contra Costa Health Services in November 2004, described Tavares as having slurred speech, a dysphoric mood, being sad and tearful, suffering from Klonopin addiction and severe recurrent depression, and having multiple somatic complaints. (A.R. 18).

Subsequently, in January 2005, Tavares reported she was less shaky and anxious, but was suffering from depression resulting from caring for her elderly mother. In February 2005, Tavares was hospitalized because she was decompensating and experiencing

suicidal ideation and hallucinations. (A.R. 18, 328). In March 2005, Tavares was hospitalized again and discharged with the following assessment: "delirium second to Klonopin and morphine withdrawal or less likely due to overuse; depression; hypertension; and anxiety." (A.R. 18, 356). Thereafter, there are no further treatment records related to Tavares' mental impairments, except with respect to her depression medication. (A.R. 18).

After evaluating the relevant portions of the record, the ALJ rejected state consultive psychologist, Dr. Weiss' conclusion that Tavares suffered from *no* severe mental health impairments. Instead, the ALJ found that the record, in its entirety, demonstrated that Tavares indeed suffered from some form of mental health impairments. Instead, the ALJ gave substantial weight to the Schuman-Lilies Clinic Report from February 2004, because he found that it accurately represented Tavares' "mental health condition generally, especially in those periods of 'calm' and that the hospitalizations were isolated incidents caused by Tavares' drug abuse." (A.R. 19).

Conditions contained in the listed impairments are considered so severe that they are presumed disabling. *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995). In determining whether a claimant with a mental impairment meets a listed impairment, the ALJ must consider: (1) whether specified diagnostic criteria (i.e., paragraph A criteria) are met; and (2) whether specified functional restrictions are present (i.e., paragraph B criteria). *Id.* A claimant who satisfies both paragraphs "A" and "B" in Listing 12.04 is presumed disabled. *Id.* at 829.

A claimant who alleges depressive symptoms will be found to have met the first prong at paragraph A of Listing 12.04 if his/her depression is characterized by least four of the following:

    (a) anhedonia or pervasive loss of interest in almost all activities; or

    (b) appetite disturbances with change in weight; or

    (c) sleep disturbance; or

    (d) psychomotor agitation or retardation; or

13

(e) decreased energy; or

(f) feeling of guilt or worthlessness; or

(g) difficulty concentrating or thinking; or

(h) thoughts of suicide; or hallucinations, delusions, or paranoid thinking.

Under paragraph B of Listing 12.04, the functional restrictions criteria, a claimant's mental health diagnosis needs to result *in at least two* of the following functional restrictions:

(a) marked restriction of activities of daily living; or

(b) marked difficulties in maintaining social functioning; or

(c) marked difficulties in maintaining concentration, persistence, or pace; or

(d) repeated episodes of decompensation, each of extended duration.

20 C.F.R. 1520 Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B).

Here, it appears that Tavares satisfies the following criteria in Paragraph 'A' or the diagnostic criteria of depression at Listing 12.04:

(1) sleep disturbances. (A.R. 17) (reporting that she had difficulty sleeping and fatigue in February 2004).

(2) suicide ideation and hallucinations when she was hospitalized in February 2005. (A.R. 17).

(3) she reported anhedonia when she underwent a medical examination in February 2004. (A.R. 17); and

(4) in November 2004, she reported during a mental health assessment that her appetite increased, and that she suffered from an inability to concentrate. (A.R. 17).

Accordingly, based on her reported symptoms, Tavares likely satisfied paragraph A of Listing 12.04 for affective disorder impairments. Nonetheless, Tavares was also required to satisfy the functional restrictions found in paragraph B of Listing 12.04, in order for her mental health impairments to satisfy the listing criteria.

In *Lester v. Chater*, the claimant suffered from physical impairments that included

mechanical back pain, failed low back surgery syndrome, and arachnoiditis of the spinal column, as well as mental impairments that consisted of a personality disorder and depression which resulted in a limited ability to maintain concentration and attention. 81 F.3d 821, 825-826 (9th Cir. 1995) The *Lester* claimant challenged the ALJ's denial of benefits, and argued that the ALJ erred by failing to take into account the combined impact of his mental and physical impairments in determining whether his condition equaled a listed impairment. *Id.* at 825. The Ninth Circuit ultimately held in favor of the claimant, ruling that an ALJ is "required to take into account the combined effect of a claimant's physical and mental impairments in determining whether his condition equals" those in the Listings. *Id.* at 828. Moreover, in making a determination as to whether a combination of impairments equals a particular listing, the court held that the ALJ "must consider whether [the claimant's] symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." *Id.* (citing 20 C.F.R. § 405.1529(d)(3)). Lastly, the court concluded that a claimant is conclusively disabled "if their condition either meets or equals a listed impairment . . . [because] a claimant's illness must be considered in combination and must not be fragmentized in evaluating their effects." *Lester*, 81 F.3d at 828-829.

Ultimately, the Ninth Circuit found that the ALJ erred in failing to evaluate Lester's mental health impairments. *Id.* The court noted that the record before the ALJ included medical expert reports that demonstrated that Lester suffered limitations arising from chronic pain syndrome, which had both a physical impairment and psychological impairment component that could not be easily separated from the part arising from his mental impairments and thus must be taken together in evaluating limitations for purposes of 12.04. *Id.* at 829. As a result, the court determined that the claimant's physical and mental impairments, if taken together, could produce functional impairments as set forth in Paragraph 'B' of Listing 12.04. *Id.*

Tavares, unlike the claimant in *Lester*, is unable to satisfy the criteria of paragraph 'B' of Listing 12.04, because when taken together, her physical and mental impairments do

15

not meet the functional restrictions Listing of Paragraph "B" of Listing 12.04. First, even though Tavares has physical impairments, they do not contribute to her depression because her daily activities and social functioning are not restricted. Instead, her depression appears minimal since she visits with her mother, uses public transportation to see her therapist, and also serves as a liaison/Vice-President of a committee at the shelter she lives at. (A.R. 420-421). Based on these activities, Tavares cannot meet the first two possible criteria in paragraph 'B'. As a result, Tavares would need to meet both of the final two criteria before she was entitled to have the ALJ consider her affective disorder in his disability evaluation. Those two final criteria include: subsection (c) – marked difficulty in maintaining concentration, persistence or pace; and subsection (d) – repeated episodes of decompensation, each of extended duration.

The record shows that Tavares reported having difficulties concentrating in November 2004. She also reported that she became confused and experienced a total breakdown related to problems she had not dealt with in her childhood. (A.R. 406-407). If Tavares is given the benefit of the doubt in this case, then it is possible that her heart failure and drug abuse could contribute to her inability to maintain concentration. Thus, Tavares would appear to satisfy the functional restrictions in subsection (c)–marked difficulty in maintaining concentration, persistence or pace. These aforementioned symptoms also have the possibility of being classified as "decompensation" episodes under subsection (d) of paragraph B of Listing 12.04. However, because subsection (d) also requires that the decompensation episode be for an extended duration, and here, the duration of Tavares' symptoms is unclear, she is unable to satisfy subsection (d). In sum, at most, Tavares satisfies only one of the functional restrictions criteria, subsection (c). This, however, is insufficient because, as noted, the regulation requires that Tavares satisfy at least two of criteria (a)-(d). *See* 20 C.F.R. 1520 Pt. 404, Subpt. P, App. 1, § 12.04(A)-(B).

Therefore, even if Tavares' mental impairments are "taken together" with her

physical impairments, she fails to meet the criteria of paragraph B of Listing 12.04. As a result, it was proper for the ALJ to evaluate Tavares' impairments in the manner that he did.

For these reasons, this claim fails.

### 4. The ALJ Properly Evaluated Tavares' Residual Functional Capacity ("RFC")

Tavares also argues that the ALJ's RFC determination was in error because he improperly rejected: (1) Dr. Grimes' medical opinions (discussed above at issue two); (2) Tavares' own testimony (discussed above at issue one); and (3) Tavares' testimony regarding the side effects of her psychiatric medication.

An ALJ's RFC determination should be based on *all* of the relevant medical and other evidence in the claimant's case record. 20 C.F.R. § 404.1545(a)(1) and (2). The ALJ should also consider all of the claimant's medically determinable impairments of which he is aware, including a claimant's medically determinable impairments that are not "severe." 20 C.F.R. 404.1545(a)(2). An ALJ's determination regarding a claimant's RFC may be overturned only if the ALJ applied an improper legal standard or his decision is not supported by "substantial evidence." *Bayliss v. Barnhart*, 427 F. 3d 1211, 1217 (9th Cir. 2005).

The ALJ's rejection of Dr. Grimes' medical opinion, and Tavares' own subjective testimony were not in error for the reasons set forth above in this court's discussion of the first two issues. Therefore, the only outstanding issue in conjunction with this claim concerns the ALJ's rejection of evidence regarding the side effects of Tavares' medication for her mental impairments.

Here, although the ALJ concluded that Tavares suffered from some level of mental impairment, he noted that he was not inclined to fully accept her testimony about the side effects of her medications because he found, based on the record, that a majority of the side effects were actually caused by her abuse of Klonopin and morphine. (A.R. 18). Moreover, the ALJ found that Tavares' statements about her drug abuse were inconsistent,

17

thus making her testimony about her medication side effects lacking in credibility. Taken together, the ALJ concluded that Tavares' credibility was questionable, and that the side effects of her medications were for the most part due to her abuse of them, and thus merited rejection of her related testimony. This rejection was proper under controlling Ninth Circuit case law, and for the same reasons discussed above at issue one with respect to the ALJ's rejection of Tavares' subjective symptom testimony. *See Smolen*, 80 F.3d at 1273.

Accordingly, this claim also fails.

### 5. The ALJ's Step Four and Step Five determination are Supported by Substantial Evidence and are not erroneous

Tavares also contends that the ALJ's determination at the fourth and fifth steps were improper because he did not use a "function-by-function" assessment, as required by Social Security Ruling 96-8P. Tavares asserts that this failure resulted in an improper RFC determination, and consequently, led to the ALJ's unfavorable finding of "not disabled." In addition to SSR 96-8P, Tavares supports this claim by simply restating that all of the ALJ's previous findings were erroneous and that accordingly, his final determination is likewise erroneous.

The Commissioner does not directly address this issue. At most, the Commissioner asserts that given the RFC found by the ALJ, the ALJ should have ended his inquiry there and that it was unnecessary for him to proceed to Step Five.

Social Security Ruling 96-8P provides the Social Security Administration's policies and policy interpretations regarding assessment of residual functional capacity ("RFC") in initial claims for disability benefits. In particular, the ruling emphasizes that an RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a "function-by-function" basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. § 404.1545 and § 416.945. It is only after these prior steps are completed that an RFC may be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy. SSR 96-8P.

Moreover, the RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. At Step Four, the ALJ must first consider whether the individual can do past relevant work as he or she actually performed it. SSR 96-8P. Without the initial function-by-function assessment of the individual's physical and mental capacities, it may not be possible to determine whether the individual can do past relevant work as he or she performed it. SSR 96-8P. At Step Five, the RFC must be expressed in regards to exertional levels. However, this can only be done if an assessment as to the individual's capacity to perform functions at different levels has previously been completed. SSR 96-8P.

As previously discussed, the ALJ considered all of the relevant record evidence, which ranged from Tavares' physical examination records to her mental health evaluations, as well as her testimony. Based on all the evidence, the ALJ then made his RFC determination. As his decision shows, he evaluated the record evidence and then appropriately considered subsections (b) and (c) of 20 C.F.R. § 404.1545 in determining the functional limits of Tavares' disability. In fact, the ALJ specifically referenced the limitations outlined in subsections (b) and (c) of 20 C.F.R. § 404.1545.

Additionally, the questions posed by the ALJ to the vocational expert ("VE") suggest that the ALJ did in fact complete a function-by-function analysis of Tavares' limitations. For instance, in the first hypothetical he posed to the VE, he asked the VE to consider the RFC determination. In the second hypothetical, the ALJ asked the VE to consider both Tavares' RFC limitations and the fact that she "can occasionally have difficulty persisting with her work such that she should be given relatively short tasks and cannot understand, remember, or carry out detailed instructions." (A.R. 432). In yet another hypothetical, the ALJ also asked the VE to further broaden the RFC limitations and consider a person that "cannot perform work that requires reaching over her shoulders and can do no more than infrequent climbing of stairs or ramps, balancing, stooping, kneeling, crouching, or crawling." (A.R. 434). As his questioning of the VE proceeded, the ALJ continued to

19

further broaden the limitations that Tavares may possess. These types of questions further suggest that the ALJ did in fact consider Tavares' function-by-function limitations.

Because this court's review of the record strongly suggests that the ALJ considered Tavares' function-by-function limitations even if he did not explicitly state in his decision that he was doing so, Tavares is not entitled to relief on this claim.

## CONCLUSION

For the above reasons, Tavares' motion for summary judgment and remand is DENIED. The Commissioner's cross-motion for summary judgment is GRANTED. This order fully adjudicates the motions listed at Nos. seven and fourteen of the clerk's docket for this case, closes the case, and terminates all pending motions.

**IT IS SO ORDERED.**

Dated: December 21, 2007

_____
PHYLLIS J. HAMILTON
United States District Judge